IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THERESA SUMMERS, Individually and on behalf all of others similarly situated,**<br>Plaintiff,<br><br>v.<br><br>**TH MINIT MARKETS LLC,**<br>Defendant. | CIVIL ACTION<br><br><br><br><br>NO. 22-2934 |

## MEMORANDUM

**HODGE, J.**                                                                                                    August 23, 2024

Plaintiff Theresa Summers brings this action against her employer, Defendant TH Minit Markets LLC, alleging violations of the Pennsylvania Minimum Wage Act ("PMWA") on behalf of herself and all others similarly situated. (*See generally* ECF No. 28.) Presently before the Court is a motion for summary judgment filed by Defendant to dismiss Plaintiff's sole remaining claim under the PMWA. (*See generally* ECF No. 31.) Plaintiff opposes the motion. (ECF No. 36.) For the reasons that follow, the Court grants Defendant's motion for summary judgment.

**I.   BACKGROUND**

   **A.   Factual Background**[1]

The facts relevant to the instant motion are as follows.[2] The "relevant period" for purposes of this action is September 7, 2021 through the present. (ECF No. 32-1 at 1 ¶ 1; ECF No. 28 at 7 ¶ 18.) Defendant owns and operates Turkey Hill retail stores, which constitute a "retail

---

[1]   The Court adopts the pagination supplied by the CM/ECF docketing system.

[2]   Unless otherwise indicated, the facts provided below are taken from Defendant's Statement of Undisputed Material Facts (ECF No. 32), the parties' stipulation (ECF No. 32-1), and/or supporting exhibits of legislative and regulatory materials (ECF No. 34).

establishment" as that term is used in Section 5(a)(5) of the PMWA. (ECF No. 32-1 at 2 ¶ 4.) Throughout the relevant period, Plaintiff was employed as a Store Manager at one of Defendant's Turkey Hill retail stores. (*Id.* at 1 ¶ 3.)

The parties stipulated that:

1. More than forty percent (40%) of Plaintiff's hours worked in each workweek were devoted to activities not directly or closely related to the performance of executive administrative activities, including, but not limited to, activities such as assisting customers, stocking shelves, or cleaning the establishment;
2. Plaintiff is compensated on a salary basis at a rate of not less than $684 per week;
3. Her primary duty is management of a customarily recognized department or subdivision of the enterprise in which she is employed, and this remained her responsibility even while performing activities not directly or closely related to executive administrative activities;
4. She customarily and regularly directs the work of two or more other employees; and
5. She has the authority to hire or fire other employees, and her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

(ECF No. 32-1 at 2-4 ¶ 5(a)-(j)). Due to the above, Defendant classified Plaintiff as a bona fide executive employee, and thus, she was classified as exempt from overtime compensation under the PMWA and Fair Labor Standards Act ("FLSA"). (*See* ECF No. 33 at 5.) Accordingly, this matter turns on an analysis of the PMWA to determine whether Plaintiff is a bona fide executive employee. The Court will now delve into the legislative history of the FLSA and its Pennsylvania counterpart, the PMWA.

In 1938, Congress enacted the FLSA to "protect covered workers from substandard wages and oppressive working hours." *Friedrich v. U.S. Computer Services.*, 974 F.2d 409, 412 (3d Cir. 1992) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot

be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Under 29 U.S.C. § 207, unless an exemption applies, an employer must pay any employee who works more than forty hours during a week at an increased rate. *See* 29 U.S.C. § 207(a)(1). Individuals who are exempt from the definition of employee under the FLSA include employees "employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1).

In 1963, the U.S. Department of Labor promulgated a regulation to define and delimit the meaning of the term "bona fide executive capacity" under the FLSA. *See* 28 Fed. Reg. 9505 (Aug. 30, 1963), codified at 29 C.F.R. § 541.1 ("1963 FLSA regulation"). (*See also* ECF No. 34-3.) That regulation provided that "bona fide executive capacity" means any employee:

> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision; and
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) Who customarily and regularly exercises discretionary powers; and
> (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) – (d) of this section: *Provided*, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
> (f) Who . . . is compensated for his services on a salary basis at a rate of not less than $100 per week . . . exclusive of board, lodging, or other facilities: *Provided*, That an employee who . . . is compensated on a salary basis at a rate of not less than $150 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

*Id.* The 1963 FLSA regulation created a long[3] test and short[4] test for exempt status.

The Pennsylvania legislature enacted the PMWA on January 17, 1968, (ECF No. 34-2.), which included an exemption from both the minimum wage and overtime provisions for employees working "[i]n a bona fide executive, administrative, or professional capacity." (*Id.* at 3.) The PMWA authorized the Pennsylvania Department of Labor & Industry to "define and delimit" the contours of the executive exemption in a parenthetical:

> as such terms are defined and delimited from time to time by regulations of the secretary, except that an employe of a retail or service establishment shall not be excluded from the definition of employe employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive administrative activities, if less than forty percent of his hours worked in the workweek are devoted to such activities.

(*Id.*)

The Pennsylvania Department of Labor & Industry promulgated its first regulation to define and delimit the meaning of the term "bona fide executive capacity" under the PMWA in 1977, and it went into effect on March 19, 1977. (ECF No. 34-4.) Before the 1977 PMWA regulation was promulgated, the term "bona fide executive capacity" under the PMWA was interpreted in conjunction with the FLSA regulations. *See Department of Labor and Industry, Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870 (Pa. Cmwlth. 2003), aff'd, 859 A.2d 1253 (Pa. 2004) (citing *Commonwealth v. Pennsylvania Labor Relations Board*, 527 A.2d 1097

---

[3]   "Under the so-called 'long' test, individuals who were paid on a salary basis of not less than $100 per week [sufficient to satisfy Section (f)] also needed to satisfy all of the requirements set forth in Sections (a) through (e) [hence the 'long' designation]." (ECF No. 33 at 10.)

[4]   "Under the alternate 'short' test [which is contained entirely within Section (f) after the word 'Provided'], individuals who were paid on a salary basis of not less than $150 per week were exempt as long as their primary duty: (a) consisted of the management of the enterprise in which they were employed or of a customarily recognized department or subdivision thereof; and (b) included the customary and regular direction of the work of two or more other employees therein." (ECF No. 33 at 10.)

(Pa. Cmwlth. 1987)) (stating that deference is given federal interpretation of federal statute when state statute substantially parallels federal statute); *Commonwealth v. Garrison*, 386 A.2d 971, 976 n.5 (Pa. 1978) ("Because the federal statute is identical in all material respects to the Pennsylvania . . . statute, this Court looks to federal decisions for guidance in interpreting [the Pennsylvania statute]."). Other than increasing the salary levels and grammatical and numbering changes, the 1977 PMWA regulation was virtually identical to the 1963 FLSA regulation. (*Compare* ECF No. 34-4 at 4, *with* ECF No. 34-3 at 1-2.) This regulation remained in effect until October 2020.

In a new regulation that took effect on October 3, 2020, the Pennsylvania Department of Labor & Industry promulgated a new regulation that eliminated the "long" and "short" tests and replaced them with a single streamlined definition of the term "bona fide executive capacity." (ECF No. 34-5 at 1-2.) One of the significant changes in the 2020 PMWA regulation was that the salary threshold would increase to $780 per week effective October 3, 2021 (and increase further in subsequent years). 50 Pa. Bulletin 5482 (Oct. 3, 2020). (*See also* ECF No. 34-5 at 2.)

On September 7, 2021, in an omnibus legislation, the Pennsylvania legislature abrogated the 2020 PMWA regulation. (ECF No. 34-6 at 3.) However, the abrogation did not simply revert the regulations back to the 1977 PMWA regulation; rather, the abrogation removed all PMWA regulations relating to executive, administrative, and professional capacity exemptions. (*Id.*) Since then, Pennsylvania has been without its own regulatory definition of what it means to be an exempt executive, administrative, or professional employee under the PMWA. This current state of the PMWA and its lack of regulations is what led to the predominant controversy between these parties.

B.     **Procedural History**

On March 22, 2023, Plaintiff filed a Second Amended Class Action Complaint ("SAC"). (ECF No. 28.) Previously, Plaintiff's claims included alleged violations of the FLSA and PMWA, and there was no time limit on the relevant period. (*See generally* ECF No. 13 (Plaintiff's First Amended Class Action Complaint).) In her SAC, Plaintiff voluntarily dismissed her FLSA claim; now, Plaintiff's sole remaining claim is that she is entitled to overtime compensation under the PMWA, and Plaintiff limited the temporal scope of her PMWA claims to a period starting September 7, 2021. (ECF No. 32-1 at 1 ¶¶ 1-2; ECF No. 28 at 7 ¶ 18.)

Defendant moves for summary judgment, arguing that it is entitled to summary judgment on Plaintiff's PMWA claim because Plaintiff is "properly classified as exempt under the PMWA's statutory exemption for individuals employed in a bona fide executive capacity," which "in the absence of a rule promulgated by the Pennsylvania Department of Labor & Industry" should be interpreted pursuant to the 1963 FLSA regulation. (ECF No. 33 at 6, 17.) Plaintiff opposes the motion. (ECF No. 36.)

**II.     LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the nonmovant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the Court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *See Anderson*, 477 U.S. at 249. Rather, the Court must simply "determine whether there is a genuine issue for trial." *Id.*

"[A]lthough the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memoranda or oral argument.'" *Goode v. Nash*, 241 F. App'x 868, 869 (3d Cir. 2007) (quoting *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the nonmovant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III. DISCUSSION

The parties dispute whether Plaintiff qualifies as a bona fide executive. Since the 2020 PMWA regulation was abrogated, Pennsylvania has lacked its own regulatory definition of an exempt executive, administrative, or professional employee under the PMWA. Defendant contends that in the absence of Pennsylvania-specific regulations, "the 1963 FLSA regulation provides the appropriate standard for assessing exempt status under the PMWA's statutory executive exemption." (ECF No. 33 at 17.) Defendant also argues that regardless of which test or regulation is applied—whether the 1963 FLSA regulation, current FLSA regulation, or any previous iteration of the PMWA regulations—Plaintiff is a bona fide executive exempt under the PMWA. (*Id.* at 7-18.) Conversely, Plaintiff argues that applying the 1963 FLSA regulation to interpret the PMWA would effectively reintroduce the very regulations that the Pennsylvania legislature abrogated. (ECF No. 36 at 12, 14.) Thus, Plaintiff maintains that in the absence of PMWA regulations, the Court should rely on the explicit language of the PMWA, "which supports the conclusion that [Plaintiff] was not an executive for the purpose of the executive exemption." (*Id.* at 14.) The issue at hand, as presented in Defendant's Motion and Plaintiff's responsive briefing, involves statutory interpretation and is therefore appropriate for summary disposition. *See Americans Disabled for Accessible Public Transportation v. Skinner*, 881 F.2d 1184, 1191 n.6 (3d Cir. 1989) (interpretation of statutory language is a legal issue for the court to decide). The Pennsylvania Supreme Court outlines the procedure for statutory interpretation of Pennsylvania statutes:

> The goal of all statutory interpretation is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). However, when the language is ambiguous, we are guided by several factors set forth in our rules of statutory construction including "the occasion and necessity for the statute," "the

    circumstances under which it was enacted," "the object to be obtained," and "the former law, if any, including other statutes upon the same or similar subjects." *Id.* § 1921(c).

*Chevalier v. Gen. Nutrition Centers, Inc.*, 220 A.3d 1038, 1052 (Pa. 2019) (quoting 1 Pa.C.S. § 1921(a)-(c)).

    Plaintiff is advocating for a novel interpretation of the PMWA in light of the abrogation of the 2020 PMWA regulation in September 2021. Plaintiff contends that when the Pennsylvania legislature abrogated the PMWA regulation defining and delimiting the executive exemption, effective September 7, 2021, this action signaled the legislature's intent to reject the "primary duty" test—a qualitative standard established under the FLSA regulations and previous PMWA regulations. (ECF No. 36 at 12.) Plaintiff further argues that, "given the clear message from the Pennsylvania legislature that the days of the 'primary duties' test are in the rearview mirror," the Court should instead apply a quantitative test, based on the plain language of the PMWA and the parenthetical in the statute, focusing on the percentage of time Plaintiff spent on non-executive administrative activities.[5] (*Id.* at 14-16.)

    The Court finds that the plain language of the PMWA is clear and free from ambiguity. The PMWA does not establish a quantitative test. The parenthetical that Plaintiff relies upon merely outlines what rule cannot be established, not what rule is created; specifically, it prohibits the Pennsylvania Department of Labor & Industry from creating a regulation that deems an employee non-exempt if they spend 40% or less on non-executive functions. *See supra* Section I.A at 4. Without the parenthetical, the statute simply states, "Exemptions.—(a) Employment in

---

[5] Plaintiff fails to specify what a quantitative test would actually entail. While Plaintiff posits that the Pennsylvania Department of Labor & Industry *could* promulgate a regulation stating that an employee who spends more than forty percent of their working hours on non-executive administrative activities—like Plaintiff—would fall outside of the exemption, (ECF No. 36 at 15.), this hypothetical scenario underscores the fact that no such regulation currently exists.

the following classifications shall be exempt from both the minimum wage and overtime provisions of this act . . . In a bona fide executive . . . capacity." (ECF No. 34-2 at 2-3.) Thus, the parenthetical in the statute serves to provide, and then limit, the authority of the Pennsylvania Department of Labor & Industry in defining and delimiting the term "bona fide executive capacity," if and when it chooses to do so. In the absence of a regulation, the term "bona fide executive capacity" has yet to be defined or delimited—just as it was between 1968 and 1977 when the PMWA was first enacted.[6]

The statutory language of the PMWA does not resolve the interpretive dispute between the parties. However, courts have long established that, where the federal and state statutes mirror each other, courts may look to federal law regarding the FLSA in interpreting the PMWA. *See, e.g., Garrison*, 386 A.2d at 976 n.5 ("Because the federal statute is identical in all material respects to the Pennsylvania . . . statute, this Court looks to federal decisions for guidance in interpreting [the Pennsylvania statute]."); *Department of Labor and Industry, Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870 (Pa. Cmwlth. 2003), aff'd, 859 A.2d 1253 (Pa. 2004) (citing *Commonwealth v. Pennsylvania Labor Relations Board*, 527 A.2d 1097 (Pa. Cmwlth. 1987)) (stating that deference is given federal interpretation of federal statute when state statute substantially parallels federal statute). *See also Espinoza v. Atlas R.R. Constr., LLC*, 657 Fed.

---

[6] Further, when an almost identical parenthetical was interpreted by this Court regarding the FLSA's administrative capacity exception, it was not interpreted to establish a quantitative test. *See VanStory-Frazier v. CHHS Hosp. Co., LLC*, 827 F. Supp. 2d 461, 470 (E.D. Pa. 2011). *See also Soehnle v. Hess Corp.*, 399 Fed. Appx. 749, 751 n.3 (3d Cir. 2010) (emphasis in original) ("What the statute really states is that the Secretary *may not exclude from (i.e., must include in)* its definition of a bona fide executive any employee who spends less than 40% of his or her time on non-managerial duties."). Also, in the Notice of Final Rule when adopting the 2004 FLSA regulation, the U.S. Department of Labor explained that the parenthetical language in the statute "is a limitation on the Department's authority to define certain employees as nonexempt." Notice of Final Rule, 69 Fed. Reg. 22128 (Apr. 23, 2004). (*See also* ECF No. 34-8 at 2-3.)

Appx. 101, 105 (3d Cir. 2016) ("When the PMWA substantially parallels the FLSA, Pennsylvania and federal courts have used FLSA law for interpretative guidance because the statutes have similar purposes."); *Baum v. Astrazeneca LP*, 372 F. App'x 246, 248 (3d Cir. 2010) (analyzing a PMWA exemption argument under the FLSA test because "Pennsylvania courts have looked to federal law regarding the [FLSA] for guidance in applying the PMWA"). Further, this held true even after the 2020 PMWA regulation was abrogated, as seen in recent decisions by sister courts within Pennsylvania. *See, e.g.*, *Brown v. Meadows at E. Mountain-Barre for Nursing & Rehabilitation LLC*, No. 3:22-CV-00828, 2024 WL 1916713, at *3 (M.D. Pa. May 1, 2024) ("For the purpose of this motion for summary judgment, the Court will use the FLSA's four factor test to review the parties' executive exemption claims pursued under both the FLSA and the PMWA because the laws are 'essentially identical.'"); *Barba v. New Century Chinese Buffet, Inc.*, No. 2:20-CV-01557, 2023 WL 6348825, at *3 (W.D. Pa. Sept. 29, 2023) (applying FLSA guidance to interpret the PMWA and citing caselaw doing the same); *Szabo v. Muncy Indus., LLC*, 661 F. Supp. 3d 337, 343 n.55 (M.D. Pa. 2023) ("The Court's analysis applies to both Szabo's FLSA and PMWA claims as both laws are essentially identical."); *Gitzen v. S&S, Inc.*, No. 2:19-CV-452, 2021 WL 6286382, at *3, n.4 (W.D. Pa. Nov. 23, 2021) (applying the FLSA regulations to determine whether the plaintiff was an exempt executive employee). Given this consistent precedent, the Court sees no reason to depart from it.

Contrary to the case law cited by Plaintiff, nothing in the FLSA and PMWA regarding the executive employee exemption is fundamentally at odds. The cases cited by Plaintiff to support her argument that the PMWA and FLSA should not be interpreted together because the Pennsylvania legislature intended to go beyond the FLSA are inapposite. (*See* ECF No. 36 at 7-10.) In those cases, the Pennsylvania legislature or the PMWA regulations were distinguishable

from the federal statute in a specific, clear, and/or enumerated way. For instance, in *In re Amazon.com, Inc.*, the Pennsylvania Supreme Court addressed whether a specific preliminary or postliminary activity—in that matter, security screenings—was considered compensable under the PMWA. 667 Pa. 16, 33-34 (2021). In that instance, the Pennsylvania legislature never adopted the classifications of the federal Portal to Portal Act of 1947 ("PTPA") that certain employee activities are uncompensable. *Id.* at 34. Thus, the Pennsylvania Supreme Court found that the legislature intended the PMWA to be interpreted beyond the PTPA. *Id.* at 34-35.

Similarly, in *Chevalier v. Gen. Nutrition Centers, Inc.*, the Pennsylvania Supreme Court highlighted specific differences between the FLSA and PMWA regarding the method of calculating overtime compensation for employees with fluctuating hours. *Compare* 220 A.3d 1038, 1041 (Pa. 2019) ("Unlike the Pennsylvania provisions, the Federal Regulations specifically address the overtime compensation of salaried employees working fluctuating hours, providing at least two potential methods of calculation[.]"), *with id.* at 1058-59 (citing Pennsylvania's regulatory decision to incorporate some methods of calculation, like the use of *Belo* contracts, while choosing not to adopt the 0.5 Multiplier of the FWW Method from the federal regulations). *See also Bayada Nurses, Inc. v. Commonwealth, Dep't of Lab. & Indus.*, 958 A.2d 1050, 1058 (Pa. Commw. Ct. 2008), aff'd, 8 A.3d 866 (Pa. 2010) ("An examination of the domestic services exemptions under both the [P]MWA and the FLSA reveals, however, that they are substantially different.").

In this case, Plaintiff seeks for the Court to interpret a departure from the federal statute based on an abrogation, without any additional basis. However, unlike in the previously referenced cases, the PMWA and FLSA, along with their respective regulations, mirrored each other until the 2020 PMWA regulation, which eliminated the "long" and "short" tests, introduced a single

streamlined definition of "bona fide executive capacity," and established a schedule for regularly increasing the salary threshold. (ECF No. 34-5 at 1-2.) Further, the abrogation of the 2020 PMWA regulation does not signal a legislative intent to reject the FLSA; rather, it does the opposite by returning the PMWA to its prior alignment with the FLSA. (*See* ECF No. 37 at 8-10 (providing persuasive legislative history indicating an intent to "roll[] back [the 2020 PMWA regulation] and keep Pennsylvania in line with Federal overtime salary thresholds").)

While the Pennsylvania legislature may diverge from the FLSA, it has not done so here. There is no directive or evidence from either the Pennsylvania legislature or the Department of Labor & Industry that suggests an intention for the PMWA to depart from the FLSA in the manner Plaintiff asserts. Further, nearly three years have passed since the abrogation, and no new PMWA regulations have been promulgated, despite multiple courts continuing to interpret the PMWA executive exemption in parallel with the FLSA regulations. *See, e.g.*, *Brown*, 2024 WL 1916713, at *3; *Barba*, 2023 WL 6348825, at *3; *Szabo*, 661 F. Supp. 3d at 343 n.55; *Gitzen*, 2021 WL 6286382, at *3, n.4. Accordingly, the Court agrees with Defendant's argument that, "in the absence of a rule promulgated by the Pennsylvania Department of Labor & Industry, the 1963 FLSA regulation provides the appropriate standard for assessing exempt status under the PMWA's statutory executive exemption."[7] (ECF No. 33 at 17.)

The Court will now apply the 1963 FLSA regulation to this matter. Defendant, as the employer, has the burden to demonstrate "plainly and unmistakably" that an employee qualifies for the exemption. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991); *Barba*,

---

[7] "[W]hen the General Assembly enacts a provision that tracks an existing federal statute, Pennsylvania courts may appropriately consider federal authority that existed at the time of the state enactment in discerning the General Assembly's intent." *Chevalier v. Gen. Nutrition Centers, Inc.*, 177 A.3d 280, 299 (Pa. Super. 2017), aff'd, 220 A.3d 1038 (Pa. 2019) (citing *Commonwealth v. Garrison*, 386 A.2d at 977 n.5).

2023 WL 6348825, at *4 ("The employer has the burden to demonstrate 'plainly and unmistakably' that an employee qualifies for the exemption."). *See also Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir. 2010) ("[T]he employer has the burden of establishing an exemption, and such exemptions are narrowly construed against the employer."). Here, the parties' stipulation sets forth several key facts that are central to the resolution of this litigation. (*See generally* ECF No. 32.)

Under the 1963 FLSA regulation's short test, "individuals who were paid on a salary basis of not less than $150 per week were exempt as long as their primary duty: (a) consisted of the management of the enterprise in which they were employed or of a customarily recognized department or subdivision thereof; and (b) included the customary and regular direction of the work of two or more other employees therein." (ECF No. 33 at 10; *see also* ECF No. 34-3 at 1-2.) First, Plaintiff stipulated that she is compensated for her services on a salary basis at a rate of not less than $150 per week (exclusive of board, lodging, or other facilities), qualifying her for application of the short test. (ECF No. 32-1 at 3-4 ¶ 5(i).) Second, Plaintiff stipulated that "Plaintiff's primary duty was the management of a customarily recognized department or subdivision of the enterprise in which she was employed (specifically, a Turkey Hill retail store)." (*Id.* at 2 ¶ 5(b).) Third, and finally, Plaintiff stipulated that:

> Plaintiff customarily and regularly directed the work of two or more other employees (specifically, two or more full-time employees or their equivalent) in the customarily recognized department or subdivision of the enterprise in which she was employed (specifically, other employees of the Turkey Hill retail store where she served as Store Manager, such as individuals employed in the positions of Assistant Manager, Guest Service Leader, and Guest Service Associate)[.]

(*Id.* at 3 ¶ 5(e).) Therefore, the Court finds that Plaintiff satisfies the 1963 FLSA regulation's short test for exempt status.[8] Thus, Plaintiff is a bona fide executive exempt from overtime as prescribed by the PMWA, and there are no genuine disputes of material fact. Accordingly, the Court grants Defendant's motion for summary judgment.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted. Plaintiff's claim under the PMWA is dismissed with prejudice. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**

---

[8] While this Motion was pending, the U.S. Department of Labor promulgated new FLSA regulations defining and delimiting the executive employee exemption that went into effect on July 1, 2024 ("2024 FLSA Regulation"). 29 C.F.R. § 541.100. An "employee employed in a bona fide executive capacity" shall mean any employee:

> (1) Compensated on a salary basis at not less than the level set forth in § 541.600;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). Also beginning in July 1, 2024, exempt executive employees cannot be compensated less than $844 per week or approximately $43,888. 29 C.F.R. § 541.600(a)(1).

In her Second Amended Complaint, Plaintiff avers that "[a]t all times relevant to this action, Turkey Hill Store Managers in Pennsylvania earned an average of approximately $55,000 per year or more (about $1,055 per week) for a 48-hour workweek (i.e., about $22 per hour for 48 hours per week)." (ECF No. 28 at 2.) Further, Plaintiff stipulated that "Plaintiff had the authority to hire or fire other employees, and her suggestions and recommendations as to the hiring, firing, advancement, promotion, and other change of status of other employees was given particular weight." (ECF No. 32-1 at 3 ¶ 5(f).) Therefore, even if the 2024 FLSA regulation provides the operative test, Plaintiff is still exempt.

15